IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| RAYTHEON COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 2:15-CV-01554-JRG-RSP |
| | § | |
| CRAY, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Cray's Motion to Compel 30(b)(6) Testimony [Dkt. # 105] is before the Court. Initially, Cray moved the Court to compel Raytheon to designate a witness with knowledge of certain topics identified in Cray's September 2016 Rule 30(b)(6) notice. Cray later narrowed the scope of relief it finds sufficient to 30(b)(6) testimony on one topic: Why certain Cray systems were not disclosed to the USPTO during prosecution of the asserted patents. Hr'g Tr. (Feb. 9, 2017) 45:6–11. For simplicity, the Court refers to this topic as Topic 16.[1]

The Court **GRANTS** Cray's Motion [Dkt. # 105] with respect to Topic 16 and, in light of Cray's narrowing of the scope of relief it seeks, **DENIES** the remainder of Cray's Motion as **MOOT**.

---

[1] More accurately, this topic is a narrowed version of the original Topic 16, which is "[r]easons for not disclosing Prior Art, including without limitation each of the Cray Prior Art Systems, to the [USPTO] during prosecution of the Patents-in-Suit." Kohm Decl. [Dkt. # 105-1] ¶ 3.

I.    BACKGROUND

In September 2016, Cray served Raytheon with a Rule 30(b)(6) notice partly directed to the asserted patents. Kohm Decl. [Dkt. # 105-1] ¶ 2. Specifically, Cray sought Raytheon's testimony concerning (1) the development and patenting of the inventions claimed in the asserted patents (Topics 2, 6, 7, 16, and 17), and (2) prior art related to the asserted patents (Topics 15–19). *Id.* ¶ 3.

Initially, Raytheon refused to provide a corporate witness for these topics. Raytheon claimed (1) the topics were better suited for other types of discovery, and (2) discovery on the topics was cumulative given that Raytheon had already provided detailed responses to Cray's interrogatories on these issues. Stringfield Decl. [Dkt. # 115-1] ¶ 9; *see also* Kohm Decl. [Dkt. # 105-1] ¶ 5.

Eventually—and after Cray filed its motion—Raytheon provided Mark White to testify on these topics on its behalf. Stringfield Decl. [Dkt. # 115-1] ¶ 4. But after White's deposition, Cray refused to withdraw its motion as moot because it claimed White was not adequately prepared to testify. *See, e.g.*, Hr'g Tr. (Feb. 9, 2017) 34:20–35:5. As an example, Cray referred to this testimony concerning its Red Storm system:

> **Q. Let me ask you this: As Raytheon's witness on this topic,--**
>
> A. Yes, sir.
>
> **Q.--knowledge of the prior art, reasons for disclosing or not disclosing prior art to the patent office, do you have any affirmative testimony to provide regarding Raytheon's reasons for not disclosing Red Storm?**
>
> A. No.

**Q. Okay.**

A. We would have disclosed it had we thought it was material and had access to that material.

**Q. And who did you talk to to support that position?**

A. No, that's our standard company policy.

**Q. All right. But you didn't talk to anyone involved in the actual prosecution of the '909 patent to make that statement?**

A. No, sir.

**\* \* \***

**Q. Are you able to provide any affirmative testimony regarding Raytheon's actual reasons for not disclosing Red Storm to the PTO?**

A. I don't know that we didn't--didn't try to disclose Red Storm. I don't--I don't see it on the list, but had we been able to and were directly aware and thought it was material, we would have disclosed it.

**Q. And who did you discuss that with to make that testimony today?**

A. That is our standard policy of our company, to go through that process. We do not want to withhold anything that would potentially invalidate a potential patent of any kind.

**Q. And how do you know that no one violated that policy in this case?**

A. Raytheon is a very highly honest and--company of integrity. It's one of our pillars. We are expected to keep some of our nation's greatest secrets, so that means, in my mind, we have some of the highest-integrity employees.

With that said, I have no in- --have no indication and no expectation that any of the inventors withheld anything.

**Q. And did you talk to anyone to form the basis of that statement?**

A. That is my opinion, over 31 years of working in a

company with many, many employees, including some of
these inventors.

**Q. Did you talk to anyone prior to your deposition
today about the Red Storm system?**

A. No.

**Q. Did you--based on that, am I safe to assume that
you did not ask them about whether they disclosed Red
Storm to the PTO?**

A. I did not ask.

**Q. And am I safe to assume, then, that you also did
not discuss with anyone the reasons either for or--
let me rephrase.**

**Am I also safe to assume that you did not speak with
anyone about reasons for disclosing or not disclosing
Red Storm to the PTO?**

A. That's correct; I didn't talk to anyone.

White Tr. (Nov. 16, 2016) 155:10–158:19 (objections omitted). Cray also referred to this

testimony concerning its T3E system:

**Q. Okay. We established earlier that Raytheon had
knowledge of the Cray T3E system?**

A. They had some knowledge. Based upon one of the
viewgraphs I saw, there were some elements of what
that system was capable of.

**Q. But you didn't actually talk to anyone about that,
right?**

A. No, sir.

**Q. Did you talk to anyone [about] why the Cray T3E
system was not disclosed in the application leading
to the '909 patent?**

A. Was it not disclosed?

**Q. I will represent to you it was not disclosed.**

A. It must have not come up during the search for the
prior art amongst those hundreds and hundreds of oth-

```
          er documents. I don't know why it wasn't disclosed.
```

White Tr. (Nov. 16, 2016) 238:19–239:18 (objections omitted).

According to Cray, this testimony shows White was not properly prepared to discuss the reasons why certain Cray systems were not disclosed to the USPTO during prosecution of the asserted patents.

## II.   APPLICABLE LAW

A party served with a Rule 30(b)(6) deposition notice must respond in one of two ways: (1) designate a person to testify at a deposition, or (2) move for a protective order. *Ferko v. National Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 133 (E.D. Tex. 2003). If the deponent designates a person to testify, the deponent must designate someone with knowledge of the matters sought by the noticing party and prepare that person to answer the questions posed about the subject matter. *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) ("The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources."); *see also Bowoto v. ChevronTexaco Corp.*, No. C 99–02506 SI, 2006 WL 294799, at *1 (N.D. Cal. Feb. 7, 2006) ("The corporation has a duty to educate its witnesses so they are prepared to fully answer the questions posed at the deposition.").

Absent a protective order, the Federal Rules of Civil Procedure do not give a party the right to not respond to a Rule 30(b)(6) notice. *La. Pac. Corp. v. Money Market 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 488 (N.D. Cal. 2012) (finding a party's "prefer[ence] to provide answers to interrogatories than to prepare a witness for a Rule

30(b)(6) deposition" irrelevant). "If a corporation has knowledge or a position as to a set of alleged facts or an area of inquiry, [its designees] must present the position, give reasons for the position, and, more importantly, stand subject to cross-examination." *United States v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C. 1996).

## III.    DISCUSSION

Based on a review of White's testimony, including the Red Storm and T3E testimony cited above, the Court agrees White was not adequately educated about why certain Cray systems were not disclosed to the USPTO. For example, White did not talk to anyone involved in prosecution of the '909 patent. White Tr. (Nov. 16, 2016) 155:21–25. Moreover, White didn't talk to anyone about reasons for disclosing or not disclosing the Red Storm or T3E systems to the USPTO. *Id.* 158:3–19. Instead, White relied on Raytheon's company policies and honesty as the basis for his 30(b)(6) testimony that Raytheon *would have* disclosed the systems if they were material. In other words, he testified about what *would have* happened if the policies were followed—not *whether* the policies were followed. *Id.*

Of course, Raytheon, through its designee, may take the position it has no knowledge on a topic, but it may not do so without a reasonable investigation about that topic. *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) ("The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources."); *see also Bowoto v. ChevronTexaco Corp.*, No. C 99–02506 SI, 2006 WL 294799, at *1 (N.D. Cal. Feb. 7, 2006)

("The corporation has a duty to educate its witnesses so they are prepared to fully answer the questions posed at the deposition."). Here, however, White's testimony shows Raytheon did not educate him about the reasons, if any, why certain systems were not disclosed. In fact, he didn't even know *whether* the T3E system had been disclosed. White Tr. 239:6–18. That is necessary and readily attainable knowledge to testify about Topic 16.

In its opposition, Raytheon makes two general points. Mainly, Raytheon argues Cray's 30(b)(6) topics are cumulative of Cray's interrogatories and better addressed through other types of discovery. Raytheon's Resp. [Dkt. # 115] at 5–6. Raytheon also argues Cray's topics are overly broad, are directed to legal contentions, and seek irrelevant information. *Id.* at 3–5.

These arguments are not persuasive. For one, the Rules don't give Raytheon the right to ignore a 30(b)(6) notice and instead rely on previously submitted interrogatory responses. *See La. Pac. Corp. v. Money Market 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 488 (N.D. Cal. 2012); *Ferko v. National Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 133 (E.D. Tex. 2003). And while some of Cray's topics may be overly broad, Topic 16—at least as it concerns Cray's systems—is not.

As to Cray's claim that Topic 16 "is an allegation, not a topic," Raytheon's Resp. [Dkt. 115] at 3, the Court disagrees—at least so far as it would excuse Raytheon from designating an educated witness to provide testimony. Even if Topic 16 is more of an allegation than a topic, Raytheon may still have knowledge or a position about it, which

Cray is entitled to discover. *United States v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C. 1996) ("If a corporation has knowledge or a position as to a set of alleged facts or an area of inquiry, [its designees] must present the position, give reasons for the position, and, more importantly, stand subject to cross-examination."). So by not providing an educated witness to testify on Topic 16, Raytheon deprived Cray of that discovery.

## IV.    ORDER

The Court **GRANTS** Cray's Motion [Dkt. # 115] concerning Topic 16 and **DE-NIES** Cray's Motion as moot concerning the remaining topics. It is therefore

**ORDERED** that Raytheon will produce a Rule 30(b)(6) corporate designee properly prepared for examination concerning "reasons for not disclosing the Cray Prior Art systems to the U.S. Patent and Trademark Office during prosecution of the Patents-in-Suit."

**SIGNED this 6th day of June, 2017.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE